IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 05, 2014

**IN RE DONALD C., ET AL.**

**Appeal from the Juvenile Court for Dickson County**
**No. 0214014CC     A. Andrew Jackson, Judge**

—————————

No. M2014-01327-COA-R3-PT - **Filed December 30, 2014**

—————————

Mother's parental rights to her children were terminated on grounds of abandonment by failure to visit, persistence of conditions, and noncompliance with a permanency plan. Mother challenged the ground of abandonment, arguing there was a no contact order in place that prevented her from visiting her children. When the no contact order was put into place, Mother was informed she would be able to visit her children if she passed drug tests and took parenting classes. Mother continued to test positive for illegal drugs and failed to take advantage of services offered by the Department of Children's Services. We affirm the trial court's judgment that Mother abandoned her children by failing to visit them and that it is in their best interest to terminate her rights. A petition for custody that may have been pending when Mother's rights were terminated is part of a different proceeding and does not render the court's decision to terminate Mother's rights premature.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS, and W. NEAL MCBRAYER, JJ., joined.

Jennifer L. Honeycutt, Nashville, Tennessee, for the appellant, B.S.R.

Herbert H. Slatery, III, Attorney General and Reporter, and Alexander S. Rieger, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

Donald C. and Deven C. were born to B.S.R. ("Mother") and D.C. ("Father") in 2008

and 2011, respectively. Mother's and Father's parental rights were terminated in June 2014. Mother, but not Father, filed a notice of appeal. Because Father does not appeal the termination of his rights, we limit our discussion to the termination of Mother's parental rights.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Department of Children's Services ("DCS") filed a petition in July 2012 to adjudicate Donald and Deven dependent and neglected based on two different referrals indicating lack of supervision and exposure to nonprescription narcotics. The record includes evidence that when he was three years old, Donald was observed unaccompanied at a playground. He crossed the street by himself and was nearly hit by a car that was backing up in a parking lot. When confronted, Mother acknowledged that Donald was outside by himself. Mother grabbed Donald's arm and scolded him for getting her into trouble. Shortly after this event, the manager of the apartment where Mother and the children lived found Donald alone at the playground with a knife in his possession. Mother stated she was not concerned that Donald had a knife because it was "not sharp." DCS conducted an investigation and found that Mother was suffering from back pain and was unable to supervise her children. DCS also discovered that Mother was taking narcotic drugs without a prescription.

The children were initially placed with Mother's relatives, but this proved to be an unsatisfactory situation. DCS filed a dependent and neglect petition on November 12, 2012, seeking temporary legal custody of the children. On November 13, 2012, Mother signed a permanency plan that was developed with the assistance of a DCS social worker. The goals of the plan were for Mother to visit with the children, provide a safe and stable drug-free home, complete an appropriate home-study, and participate in family therapy. A condition of Mother's visitation was that she submit to random drug tests and that she test negative for any illegal substance before visitation could occur.

Mother visited with the children three times at the end of 2012, after the development of the permanency plan. Mother's visits were terminated shortly after these visits based on what a DCS social worker described as "extreme excessive behaviors exhibited by the oldest child, Donald." According to the social worker, Donald was urinating on the walls, he was acting overly aggressively, and he was using "language [that] was incredible for a four-year-old, not in a good way."

On January 23, 2013, the trial court ordered that Mother's visitation with the children be terminated until the children were evaluated by Dr. Janie Berryman, a clinical psychologist. The trial court entered an order in February 2013 in which it found the children

2

were dependent and neglected and awarded custody of the children to DCS. Donald and Deven were placed with foster parents.

Mother was tested for drugs on February 15, 2013, the day that the dependency and neglect petition was heard, and she tested positive for opiates and oxycodone. Mother was tested again on March 27, 2013, when she was at court for a review hearing. This time Mother tested positive for oxycodone, opiates, and cocaine. Mother attended a three-week treatment program in Kentucky in April 2013. Upon leaving the facility, it was recommended that Mother continue out-patient therapy, attend Alcoholics Anonymous meetings, obtain a sponsor, and work through the twelve-step program. No evidence was introduced that Mother has followed these recommendations.

A hearing was held in December 2013 to review the permanency plan. The trial court noted that DCS was making reasonable efforts towards helping Mother reach the permanency goals, but that Mother was not in substantial compliance. Specifically, the court found that Mother:

> has not established a stable residence, has no completion of parenting classes, has not had consistent clean drug screens, has not completed hair follicle analysis, has not completed psychiatric assessment and has not completed aftercare plans for drug treatment . . . .

The court also noted that therapeutic supervised visitation of Deven by Mother had been approved on the condition that Mother complete parenting classes, but that Mother had failed to satisfy this condition.

DCS filed a petition to terminate Mother's and Father's parental rights in February 2014. The grounds DCS alleged included abandonment, failure to comply with the requirements of a permanency plan that was put into place in November 2012, and persistence of conditions. A trial was held on June 14, 2014, at which neither Mother nor Father appeared. The individuals who testified included a DCS supervisor, two different DCS case workers, a psychologist who has worked with Donald, and a therapist who has seen Mother.

Dr. Berryman testified at trial that she had diagnosed Donald with post-traumatic stress disorder based on some of the child's behavior, some of it sexualized. The psychologist explained as follows:

> He's described some domestic violence. I know that it's basically a fact that he actually witnessed somebody getting shot in front of him in his

3

mother's presence at a hotel, somewhere here in Dickson when he was still living with the parents.

He has got a lot of disturbing behaviors. He sexually acts out, indicating to me that he has seen something, or heard something, or something has happened to him somewhere, though he has not disclosed any specific sexual abuse.

He has talked about - - he has an obsession with knives and guns that is beyond what I think that a child his age should have. . . . [T]here's just this obsession with weapons that's very disturbing.

When asked what she recommended for Donald going forward, the psychologist

responded:

He needs a stable environment. He needs people that are consistent that can monitor his behavior and keep extra close supervision on him.

## II. TRIAL COURT ORDER

Based on the evidence presented, the trial court terminated Mother's parental rights to both Donald and Deven. The court made the following pertinent findings of fact by clear and convincing evidence:

The Court finds that Donald [C.] and Deven [C.] were placed in the custody of the Tennessee Department of Children's Services due to dependency and neglect on November 5, 2012. The children were being left unsupervised for extended periods of time and their parents showed no concern for their welfare. Donald [C.] and Deven [C.] were adjudicated to be dependent and neglected on February 15, 2013, by the Juvenile Court of Dickson County, Tennessee. The mother stipulated that the children were dependent and neglected due to her not supervising them appropriately . . . .

The Court finds that [Mother] willfully failed to visit said children for four (4) months immediately preceding the filing of this petition . . . . [Mother] has not visited the children since at least December 2012. The Court issued a no contact order for [Mother] with regard to Deven [C.] until she completed parenting classes in January 2013. She never completed the parenting classes. There is a no contact order for [Mother] as to Donald [C.]

4

on the recommendation of his therapist, Dr. Janie Berryman, until [Mother] completes the tasks on the Permanency Plan. [Mother] has shown so little interest in visiting with her children that she has failed to take the steps necessary to visit. [Mother] was aware of her duty to visit the children. [Mother] knew the children were in foster care and knew what to do to establish visitation. [Mother] even filed a Motion for Visitation and set it for November 6, 2013, and then did not show up for that court date. [Mother] has made no attempt to visit the children since December 2012 except for the Motion she filed in November 2013, and has provided no justifiable excuse for failing to visit the children.

The Court finds that the Department has made reasonable efforts to assist [Mother] in visiting the children by attempting to provide her with the services necessary to have the no contact order dissolved.

. . . .

The Court finds that [Mother] has not substantially complied with the provisions of the permanency plan and therefore her parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(2). The initial permanency plan dated November 13, 2012, requires her to visit the children, provide them with a safe, stable and drug free home and participate in family therapy.

The Court finds that the requirements in the permanency plan are all reasonably related to remedying the conditions that necessitate foster care. The requirements to provide her children with a safe, stable and drug free home are particularly important in reducing the risk of harm to the children so that the children could be safely returned to the parent's care.

The Court finds that [Mother] has not completed the following requirements in the permanency plans: she has not visited with the children; she has not been able to provide them with a safe, stable and drug free home; and she has not participated in family therapy.

The trial court then concluded, based on clear and convincing evidence, that Mother had abandoned the children because she had not visited them since December 2012. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i). In addition to the ground of abandonment, the court concluded termination of Mother's rights was warranted based on her substantial noncompliance with the obligations she had under the permanency plan and the persistence

5

of conditions that initially led to the children's removal. *See* Tenn. Code Ann. §§ 36-1-113(g)(2) and (3).

The court next conducted a best interest analysis and concluded, by clear and convincing evidence, that terminating Mother's parental rights was in the children's best interest.

### III. ISSUES ON APPEAL

Mother raises three issues on appeal. First, Mother contends the trial court erred in terminating Mother's parental rights based on the ground of abandonment. Second, Mother asserts the court failed to make specific findings as to the statutory factors in determining the children's best interest. Third, Mother argues the court's termination of Mother's rights was premature because a petition for custody was pending in the dependency and neglect proceedings.

### IV. ANALYSIS

#### A. Grounds for Termination

Termination of parental rights is one of the most serious decisions courts make. As the United States Supreme Court has said, "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *Santosky v. Kramer*, 455 U.S. 745, 787 (1982). Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger, and of "severing forever all legal rights and obligations of the parent or guardian." Tenn. Code Ann. § 36-1-113(l)(1).

A parent has a fundamental right, based in both the federal and state constitutions, to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *In re Adoption of a Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). While this right is fundamental, it is not absolute. The State may interfere with parental rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250.

Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

6

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child(ren)'s best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Appellate courts review the trial court's findings of fact in termination proceedings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. "In light of the heightened burden of proof in [termination] proceedings . . . the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97.

Proof of only one statutory ground is necessary to support a court's termination of a parent's rights. *In re Adoption of Angela E.*, 402 S.W.3d 636, 641 (Tenn. 2013); *In re Valentine*, 79 S.W.3d at 546. The trial court here terminated Mother's rights to Donald and Deven based on three separate grounds: abandonment, noncompliance with conditions of the permanency plan, and persistence of conditions. Tenn. Code Ann. §§ 36-1-113(g)(1), (2), and (3). Mother does not contest the trial court's decision to terminate her rights based on her noncompliance with the terms of the permanency plan or the persistence of conditions that led to the children's initial removal. The only challenge Mother raises on the issue of grounds is that her abandonment was not "willful" because an order was entered on February 6, 2013, prohibiting her from visiting the children.[1] Mother alleges that, "[b]ecause of this order, Mother did not have the capacity to visit, could not visit, and had a justifiable excuse for not doing so." We do not agree.

When Mother agreed to the permanency plan in November 2012, she was informed

---

[1]We recognize that it is not necessary to address the ground of abandonment by failure to visit because Mother did not challenge the trial court's conclusion that termination was established by proof of her failure to comply with the permanency plan and persistence of conditions, and only one ground is necessary to support the grounds for termination. However, we want to clarify that the trial court's limitation on Mother's visitation did not vitiate the fact that Mother's failure to visit her children was "willful."

7

that her parental rights could be terminated if she failed to visit the children in the four months immediately preceding the filing of a termination petition. The permanency plan clearly stated that Mother should visit with the children, but that she "must test negative for any illegal substance or the visit will not occur." The no contact order that Mother references was put into place in January 2013, after a DCS social worker noted Donald's exhibiting excessive behavior, including urinating on the walls, acting in an aggressive manner, and using bad language following a visit with Mother. The no contact order was to last until Dr. Berryman was able to evaluate the children. Donald began seeing Dr. Berryman soon after this hearing.[2] Then, following the dependency and neglect hearing that took place on February 15, 2013, the trial court entered another order that essentially modified the earlier no contact order by granting Mother "therapeutic visitation" with the children beginning the week of March 11, 2013. The court ordered that Mother was to submit to random drug screens and drug tests before any visitation was permitted to occur and that if she tested positive for any illegal or non-prescription drugs, visitation was to cease until further notice from the court.

Following an annual permanency hearing on December 4, 2013, the trial court noted in an order dated January 22, 2014, that, although therapeutic supervised visitation had been approved for Mother with Deven, she had not completed the parenting classes that were a prerequisite for this visitation. In addition, the court found that Mother "has not had consistent clean drug screens, has not completed hair follicle analysis, has not completed psychiatric assessment and has not completed aftercare plans for drug treatment . . . ." The court also found that Mother was "not cooperating with services to continue process of reunification." Consistent with the trial court's findings, a DCS social worker testified that she had provided information to Mother regarding free parenting classes, but that Mother did not complete any of these classes.

"Abandonment," for purposes of parental termination, means that a parent has willfully failed to visit his or her child(ren) for four consecutive months immediately before a petition is filed to terminate that parent's rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). A parent's abandonment must be "willful" before a court will terminate his or her rights. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *In re Audrey S.*, 182 S.W.3d at 863. A person acting under her free will, who is not being coerced, is acting "willfully," for purposes of the parental termination statutes. *Id.* "Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

---

[2]The record reveals that Deven was evaluated through the Tennessee Early Intervention System, and there were no specific recommendations as to him. Deven was just over one year old at this time.

8

Contrary to Mother's contention, our Supreme Court has held that a prior order suspending a parent's visitation rights "did not preclude a finding that [a parent] willfully failed to visit the children." *In re Adoption of Angela E.*, 402 S.W.3d at 642. In the case *In re Adoption of Angela E.*, the father's visitation rights were suspended due to his lack of supervision over his children when they were in his care. *Id*. at 638. The father's visitation rights could have been restored if he had petitioned the court and set a hearing, but he did nothing more than file a petition with the court. Then, once termination proceedings were instituted two years later, the father initiated efforts to visit his children. *Id*. at 642. The Court found the father had no reasonable excuse for not pursuing his petition to reinstate visitation for two years and concluded Father's parental rights should be terminated because he had abandoned his children by willfully failing to visit them. *Id*.

The cases *State of Tennessee Department of Children's Services v. J.A.H.* and *In re Elijah B.* are directly on point. In *J.A.H.*, the Court of Appeals held that a father's decision not to submit to drug testing to lift an order preventing him from visiting with his son constituted a willful decision not to visit. *State of Tenn. Dep't of Children's Servs. v. J.A.H.*, No. E2005-00860-COA-R3-PT, 2005 WL 3543419, at *5 (Tenn. Ct. App. Dec. 28, 2005). Similarly, in the case *In re Elijah B.*, the Court of Appeals rejected a father's argument that a no contact order excused him from visiting his children. *In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *8 (Tenn. Ct. App. Dec. 29, 2010). As here, the father in *Elijah* had been informed that visitation would be reinstated if he passed a drug test. *Id*.

In this case, Mother knew what she had to do in order to be permitted to visit her children. Despite being provided with information about free parenting classes, Mother elected not to take advantage of the services offered. In addition, Mother elected not to submit to the necessary drug tests to prove she was no longer taking illegal drugs. We conclude that DCS proved by clear and convincing evidence that Mother willfully abandoned her children by failing to visit them in the four months immediately before DCS filed the petition to terminate Mother's parental rights.[3]

### B. Best Interest Analysis

The next issue Mother raises is that the trial court failed to address the requisite statutory factors when conducting its best interest analysis. Once a ground for termination

---

[3]Mother also contends that she has been diagnosed with bi-polar disorder, polysubstance dependency, and severe depressions with psychotic features. She argues that because of these diagnoses, her failure to visit her children cannot be considered "willful." The record reflects that Mother has been "inconsistent with treatment." Mother fails to explain how her diagnoses affect her ability to visit her children or why they would cause her failure to visit to be anything other than "willful." Accordingly, we reject this argument.

is established by clear and convincing evidence, the trial court or the reviewing court conducts a best interests analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

Statutory factors are set out for the best interests analysis that the court "shall consider," but that analysis "is not limited to" the factors enumerated in the statute. Tenn. Code Ann. § 36-1-113(i); *In re Angela E.*, 303 S.W.3d at 251; *In re Audrey S.*, 182 S.W.3d at 878. Every factor need not be applicable in order for the trial court to determine that it is in the best interest of the children for a parent's right to be terminated. The relevance and weight to be given each factor depends on the unique facts of each case. In some cases, one factor alone may be sufficient to determine the outcome. *In re Audrey S.*, 182 S.W.3d at 878; *see In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005) (noting courts are not required to find existence of every factor to conclude terminating parental rights is in child(ren)'s best interest).

In conducting its best interest analysis here, the trial court determined that the following statutory factors were most relevant to the facts of this case:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child; and
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child.

Tenn. Code Ann. §§ 36-1-113(i)(1), (3), and (4). The court applied each of these factors to the evidence that was presented and concluded that DCS had established by clear and convincing evidence that terminating Mother's parental rights was in the best interest of the children. The court wrote:

> The Court concludes that termination of [Mother's] . . . parental rights is in the children's best interest. [Mother] . . . ha[s] not made any adjustment

10

of circumstance, conduct, or conditions. Tenn. Code Ann. § 36-1-113(i)(1). The Department has made reasonable efforts to assist both parents in working on the tasks in the permanency plan and to maintain visitation.

The Court also concludes that Tenn. Code Ann. § 36-1-113(i)(3) is present here. [Mother] ha[s] not visited regularly with the children. Neither parent has visited since December 2012. There were court orders prohibiting visitation, but that prohibition could have been lifted if [she] had completed the tasks ordered by the Court.

The Court concludes that termination is in the children's best interest under Tenn. Code Ann. § 36-1-113(i)(4) in that there is no meaningful relation established between the children and [Mother].

. . . .

The Court concludes that [Mother] ha[s] shown little to no interest in the welfare of the children.

Thus, the Court concludes that several factors under § 36-1-113(i) are present. Accordingly, termination is clearly in the children's best interest.

Mother does not challenge any part of the trial court's analysis; instead, she contends that "[t]here is nothing in the record to indicate that the trial court took any of the [statutory] factors under consideration in making its ruling." This argument is patently incorrect, as shown by the excerpt of the trial court's judgment reproduced above. We agree with the trial court that, based on the evidence presented at trial, DCS established by clear and convincing evidence that terminating Mother's parental rights is in the best interest of the children.

C. Pending Custody Action

Mother's final argument is that the trial court acted prematurely in terminating her parental rights because there was a custody action pending in the dependency and neglect proceedings that was not adjudicated before the court entered a final order terminating Mother's rights. The record does not reflect that a petition for custody was filed in this case. However, the trial court referred to a custody petition filed by "Ms. Overton" in the order dated February 27, 2013, in which the trial court found Donald and Deven were dependent and neglected and transferred custody from Mother and Father to DCS.[4] The court wrote that

_____

[4]The record suggests Ms. Overton is Mother's mother.

the custody petition "was tabled for hearing at a later date." Mother points to nothing else in the record regarding the custody petition, and we are aware of no other reference to it.

This case was initiated by DCS's petition to terminate Mother's and Father's parental rights. The only parties to this case are DCS, Mother, and Father. Neither the trial court's decision finding the children dependent and neglected nor any custody petition is on appeal before this court. Ms. Overton is not a party to this case. A termination proceeding is separate from a dependency and neglect proceeding, with different goals, remedies, and evidentiary standards. *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004); *In re Alyssa B.*, M2011-02698-COA-R3-PT, 2012 WL 3041190, at *3 (Tenn. Ct. App. July 25, 2012). The distinction between the two proceedings has been described thusly:

> Dependency and neglect proceedings and proceedings to terminate parental rights have distinct purposes. In a dependency and neglect action, the primary purpose is to "provide for the care and protection of children whose parents are unable or unwilling to do so." *State v. T.M.B.K.*, 197 S.W.3d 282, 288 (Tenn. Ct. App. 2006) (citing *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004)). The purpose of termination proceedings is "to irrevocably sever the legal relationship between parent and child." *Id*.

*In re Gina A.*, M2011-00956-COA-R3-JV, 2012 WL 1388378, at *5 (Tenn. Ct. App. Apr. 19, 2012).

The fact that a custody petition may be pending as part of a different proceeding does not impact the trial court's ability to terminate a parent's rights if termination is warranted under the law and facts of the case. We disagree with Mother's argument that the trial court ruled on the petition for termination prematurely.

V. CONCLUSION

The trial court's judgment terminating Mother's parental rights to Donald and Deven is affirmed. Costs of this appeal shall be assessed against the appellant, B.S.R.

_____
ANDY D. BENNETT, JUDGE

12